CHARLES E. BOLCH, APPELLANT, v. WEST VIRGINIA COAL COMPANY OF MISSOURI, A CORPORATION, RESPONDENT.*

St. Louis Court of Appeals. Opinion filed June 29, 1926.

1.—**Sales—Substitution—Implied Contracts—Burden of Proof.** In an action to recover the purchase price of two carloads of mine ties alleged to have been sold and delivered by plaintiff to defendant, which ties defendant had ordered from a dealer, the burden was on the plaintiff to show that defendant agreed expressly or impliedly to the novation or substitution of plaintiff as seller in the stead of the original seller.

2.—**Same—Same—Same—Agreement to Substitute—Necessary to Show Buyer's Knowledge of Intended Substitution.** An agreement to substitute plaintiff as original seller will not be implied from the mere knowledge on the part of the defendant that its order to seller had been filled by plaintiff, but it must appear that the defendant knew that plaintiff intended a novation or substitution of himself as seller in the stead of the original seller.

3.—**Novation—Sales—Plaintiff Intending to Substitute Himself in Place of Original Seller—Requirements.** In an action to recover the purchase price of mine ties, if the plaintiff intended a novation, by substituting himself in the place of the original seller, it was his duty to make such novation known to defendant in unequivocal language before it received and used the ties.

4.—**Same—Same—Same—Estoppel.** In an action for the purchase price of mine ties, plaintiff, failing to declare his intention of being substituted by novation in the place of the original seller before defendant received and used the ties, and waiting for seven months after shipment and until the original seller was paid before demanding payment from defendant, cannot be heard to say, in a suit for the purchase price of the ties, that he so intended.

5.—**Same—Same—Same—Evidence—Warranted Finding Novation Not Intended.** In an action for the purchase price of mine ties, where plaintiff claimed substitution by novation, **held** under all the facts and circumstances shown in evidence, the trial court was not bound to find that plaintiff ever intended a novation.

6.—**Pleading—Answer—Admissions—Sales—Novation.** In an action to recover the purchase price of mine ties alleged to have been sold and delivered by plaintiff to defendant, which ties defendant had purchased from a dealer, and plaintiff claimed to be substituted by novation in place of the original seller, the answer admitting a delivery of the ties and that plaintiff sent defendant an invoice for said ties does not admit a novation of plaintiff in place of the original seller.

---

*Corpus Juris-Cyc. References: Novation, 29Cyc, p. 1132, n. 15, 16; p. 1133, n. 20; p. 1139, n. 63, 68. Pleading, 31Cyc. p. 214, n. 36. Sales, 35Cyc. p. 564, n. 72; p. 571, n. 65.

Appeal from the Circuit Court of the City of St. Louis.—Hon. Franklin Miller, Judge.

AFFIRMED.

*John A. Nolan* and *Robert S. Harbison* for appellant.

(1) Estoppel being an affirmative defense must be specially pleaded, and if the facts pleaded are insufficient in law to constitute estoppel, no defense is stated. Blodgett v. Perry, 97 Mo. 263, 10 S. W. 891. (2) Estoppel, pleaded as an affirmative defense, must be proven, and the burden of proof to establish it is on him who relies thereon. Pollard v. Ward, 289 Mo. 275, 233 S. W. 14; Garesche v. Levering. I. Co., 146 Mo. 436, 48 S. W. 653; Warthrup v. Colter, 150 Mo. App. 639, 131 S. W. 364. (3) Estoppels are not favored and will not be sustained where both parties had equal opportunity to learn the true facts, or where the party claiming it as a defense has not exercised due diligence. 10 R. C. L. 21, 24; 58 L. R. A. 788; Blodgett v. Perry, supra; Grafeman v. Northwestern Bank, 290 Mo. 311, 235 S. W. 435.

*Burton & Hamilton, M. C. Young* and *Anderson, Gilbert & Wolfort* for respondent.

(1)   The finding of the trial court sitting as a jury is conclusive as to the facts.  Bowles v. Payne, 251 S. W. 101; Engleman v. Baker, 250 S. W. 919; Phillips v. Wilson, 250 S. W. 408; Hunter v. Weil, 222 S. W. 473.   (2)   As between innocent parties the one who has permitted the situation to arise must suffer.  Baade v. Cramer, 278 Mo. 531; Neuhoff v. O'Reilly, 93 Mo. 164.   Where a writing is subject to two constructions, and the party who did not draw the writing construes and acts upon his construction, his construction, will be adopted.  Belch v. Schott, 171 Mo. App. 357; Mathews v. Modern Woodmen, 236 Mo. 342; Lock Joint Pipe Co. v. Melber, 234 Fed. 323; Ryan v. Ohmer, 244 Fed. 342.   (3)   The facts stated in the answer are sufficient to constitute an estoppel.  Pollard v. Ward, 289 Mo. 286; Hart v. Giles, 67 Mo. 175.

SUTTON, C.—This is an action to recover the purchase price of two carloads of mine ties alleged to have been sold and delivered by plaintiff to defendant.  The ties were purchased for defendant by its purchasing agent, T. J. Sandoe.  Some time in August, 1922, Sandoe gave W. E. Rash an order for two carloads of mine ties at twenty cents per tie, to be delivered to defendant at O'Fallon, Illinois.  Rash was a dealer in mine ties and other timber, having his place of business at Bismarck, Missouri.  Rash accepted the order given him by Sandoe, and agreed to ship the ties accordingly.  He thereupon ordered from the plaintiff, who was a timber dealer at Annapolis, Missouri, two carloads of ties to be shipped by plaintiff to defendant at O'Fallon, Illinois.  Plaintiff accepted the order, and shipped the ties accordingly.  One carload was shipped on or about September 1st, and the other on or about September 12th.

The petition charges that the plaintiff on or about August 31, 1922, shipped from Annapolis, Missouri, in car T. H. & B. No. 3003, 1,922 4x5 mine ties consigned to defendant at O'Fallon, Illinois; that on or about September 1, 1922, plaintiff forwarded to defendant at its office in the city of St. Louis an invoice covering the shipment of ties at a price of twenty cents each, f. o. b. destination, making a total of $384.40; that said price represented the fair and reasonable value of said ties at said time; that on or about September 15th said ties were delivered to and received by defendant; that defendant paid freight charges on said ties amounting to $92, leaving a balance of $292.40 due plaintiff for said carload of ties; that on or about September 12, 1922, plaintiff shipped from Annapolis, Missouri, in car I. C. No. 118814, 2,550 4x5 mine ties consigned to the defendant at O'Fallon, Illinois; that on or about September 13, 1922, plaintiff

forwarded to defendant at its office in St. Louis, Missouri, an invoice covering said shipment of ties at a price of twenty cents each, f. o. b. destination, making a total of $510; that said price represented the fair and reasonable value of said ties; that on or about September 28, 1922, said ties were delivered to and received by defendant; that the defendant paid freight charges on said ties amounting to $112, leaving a balance of $398 due plaintiff for said carload of ties.

The answer admits that on or about August 31, 1922, there was shipped from Annapolis in car T. H. & B. No. 3003, 1,922 4x5 mine ties consigned to defendant at O'Fallon, Illinois; that said ties were delivered to and received by defendant; that the freight charges on said ties amounting to $92 were paid by defendant; that plaintiff sent defendant an invoice for said ties on September 1, 1922; that on or about the 12th day of September, 1922, there was shipped from Annopolis, Missouri, in car I. C. No. 118814, 2,550 4x5 mine ties consigned to defendant at O'Fallon, Illinois; that said ties were delivered to and received by defendant; that the freight charges on said ties amounting to $112 were paid by defendant; that plaintiff sent to defendant an invoice for said ties on September 13, 1922; denies each and every other allegation in the petition contained; alleges that on October 16, 1922, defendant paid W. E. Rash $292.40, and on November 17, 1922, paid said Rash $398, the amounts due him on said carloads of ties; and charges that the defendant is estopped to deny that said W. E. Rash was entitled to such payments.

The cause was tried to the court without a jury. No instructions or declarations of law were asked, and none were given. The trial resulted in a judgment for the defendant, and the plaintiff appeals.

Upon this appeal the plaintiff contends that under the evidence the judgment should have been in his favor, and that the court erred in not so holding. As we understand the plaintiff's contention, it is, that, though the defendant originally purchased the mine ties from W. E. Rash as the seller thereof, there was a novation or substitution of the plaintiff as the seller of the ties, so that the relation of seller and purchaser arose between plaintiff and defendant, and that under the facts this court should so hold as a conclusion of law, and reverse the judgment of the court below and remand the cause with directions to that court to enter judgment for the full amount of the purchase price of the ties sued for. On the other hand, the defendant contends that it purchased the ties from Rash, that it did not know the plaintiff in the transaction, and that no novation or substitution of the plaintiff as the seller was intended or agreed upon by the parties, and further contends that the plaintiff under the facts is estopped to claim that there was such a novation or sub-

stitution, or that Rash was not entitled to receive the purchase price of the ties.

Both the plaintiff and the defendant place much reliance, for the support of their respective contentions, upon the invoices sent by plaintiff to defendant when the ties were shipped.

The invoice for the first shipment is as follows:

Annapolis, Mo. 9-1-1922.

West Virginia Coal Co., St. Ellen Mine
 St. Louis, Mo.
  To Chas. E. Bolch Dr.
   T H & B 3003
1922 pcs. 4 x 5 x 5½ ties @ 20¢          384.40
Mr. Sandoe
 This car applies on order given Aug. 28th.

W. E. RASH.

This invoice was mailed by plaintiff on September 1st and was received by defendant at its office in St. Louis on September 2nd.

The invoice for the second shipment is as follows:

Annapolis, Mo. 9-12-1922.

West Virginia Coal Co. — St. Ellen Mine
 St. Ellen, Ills.
  To Chas. E. Bolch Dr.
   IC 118814
2550 pcs. 4 x 5 x 5½ mine ties @ 20         510.00
Mr. Sandoe
 Apply this on my order

W. E. RASH.

This invoice was mailed by plaintiff on September 12th, and was received by defendant at its office in St. Louis on September 16th.

The plaintiff contends that these invoices conclusively show an intention on the part of both plaintiff and Rash to substitute the plaintiff for Rash as the seller, and that the defendant, having accepted the ties and used them after receiving these invoices, thereby impliedly agreed to the substitution and obligated itself to pay plaintiff for the ties; whereas the defendant contends that the invoices do not show an intention on the part of plaintiff or Rash to substitute plaintiff as the seller, but that they show just the contrary, and that the defendant so construed the invoices and therefore paid Rash for the ties. It must be conceded that the invoices are not free from ambiguity. There is no direct statement in the invoices to the effect that Rash had assigned his rights under the contract to plaintiff, or that the ties were sold by plaintiff to defendant, or that they were shipped pursuant to a sale by plaintiff to defendant. No letter or explanation of any kind accompanied either of the invoices, and the plaintiff did not afterwards communicate with

the defendant in any respect concerning the ties until December 23, 1923, more than three months after the shipments were made, and under the evidence the court was justified in concluding that the plaintiff did not demand of defendant payment for the ties until March 29, 1923, almost seven months after the shipments were made, though the plaintiff admitted that sixty days was the period of credit customarily allowed on sales of this character. The communication of December 23rd merely asked for information as to the amount of the freight bills paid by defendant on the shipments. To this communication the defendant promptly replied, giving the information asked for. Plaintiff also admitted that at the time the shipments were made he had no information or knowledge whatever, and at no time made any investigation or inquiry, concerning the financial responsibility of the defendant. Plaintiff testified that on January 24th and also on February 6, 1923, he wrote defendant demanding payment for the ties. These letters were not introduced in evidence, and it was not admitted by defendant that they were either written or received. It was not shown that the letters were answered or their receipt acknowledged by the defendant. All other letters written by plaintiff to the defendant were promptly answered, and the originals of the letters written by plaintiff and the answers thereto by defendant were put in evidence by plaintiff. Plaintiff admits that after February 6th he did not demand payment of defendant or communicate with it again in any respect until March 29th, a period of fifty-one days. Plaintiff's letter of March 29th was promptly answered by defendant informing plaintiff that it had paid Rash for the ties and that plaintiff should look to Rash for payment. On March 31st plaintiff again wrote defendant demanding payment for the ties. To this letter the defendant promptly responded that the shipments referred to applied on order given to W. E. Rash, and that therefore the plaintiff should close his files to defendant. Other correspondence ensued between plaintiff and defendant, plaintiff insisting that defendant should pay plaintiff for the ties, and the defendant insisting that it had purchased from Rash and had paid him for the ties, and declining to pay plaintiff therefor.

Vouchers for these shipments, drawn on the National City Bank of St. Louis, payable to the order of W. E. Rash, were made out and forwarded to him by the defendant. One of these vouchers was dated October 16, and the other, November 17, 1922.

The voucher of October 16th was for $292.40, and recited as follows:

In payment of your invoice dated 9/1/22 Car TH&B 3003 Mine Ties to St. Ellen Mine 384.40 Less Frt. as per E/B attached 92.00, $292.40.

The voucher of November 17th was for $398, and recited as follows:

Inv. 9/12/22 St. Ellen Mine 510.00 Less Freight as per E/B attached 112.00, $398.00 Car I. C. 118814.

The vouchers are endorsed, "W. E. Rash by Mrs. W. E. Rash," and bear the St. Louis Clearing House stamp of March 6, 1923. Mrs. Rash testified that she received the vouchers and deposited them under the instructions of Mr. Rash; that she did not deposit them immediately, but held them about a couple or three months according to his instructions to her on account of a personal matter that was coming up between her and him; that she held the vouchers on his instructions, and then deposited them and disbursed the money on his instructions.

Plaintiff had known W. E. Rash for three or four years prior to the transaction involved here and had sold him ties and made shipments thereof on his orders and charged them to his account, and had had various business dealings with him. He did not know Sandoe, the purchasing agent of the defendant, and had not prior to this occasion shipped any material to, or had any business dealings with, the defendant.

Plaintiff testified:

"Rash owed me approximately $1,500 to $2,000 on previous shipments. He came to me in August, probably about the 15th of August, and said he had a large contract with the Dellangela Coal Co. and wanted to know if I could help him out. I said no he could not pay for what he had already got. He said: 'I will allow you to be shipper and invoice direct to the company and they will pay you direct.' I agreed to do so. After I made a few shipments to Dellangela Coal Company he also gave me orders to ship these two cars to the West Virginia Coal Company on the same terms; and I did. I did not communicate that fact however, to the West Virginia Coal Company other than by sending the invoices. I did not get any orders for these ties from the West Virginia Coal Company. I filled the order that Rash had already taken."

W. E. Rash, produced as a witness on behalf of the plaintiff, stated that he sold the defendant two carloads of ties which he directed the plaintiff to ship to defendant, and that he communicated that fact in writing to the defendant by making notations on the invoices prepared and sent to the defendant by the plaintiff.

The defendant had previously purchased and received shipments of mine ties from Rash for a number of years from time to time, and had always paid him for previous shipments irrespective of where he obtained the ties, or by whom the shipments were made. Defendant always dealt direct with Rash and paid him for the ties regardless of where he obtained them. Defendant did not know the plaintiff, and had never had any previous business dealings with him.

Two or three months after the shipment of the two cars of ties involved in this suit, Rash entered into the employ of the plaintiff, and remained in his employ receiving monthly remittances from him during the time that the correspondence was being carried on between plaintiff and defendant as hereinbefore mentioned. If the contention now made by plaintiff is correct, he must have known during all that time that Rash had accepted from the defendant and appropriated to his own use, $690.40 which rightfully belonged to the plaintiff. In view of this, it is worthy of remark that plaintiff and Rash were getting along together unaccountably well.

It is not contended that Rash was a broker or that he acted as such in the transaction involved here. It is certain that he was not the agent of the defendant and did not represent himself to plaintiff as such. He was a dealer, and sold the ties to defendant on his own account. Plaintiff knew this at the time he made the shipments in question. To hold the defendant liable to plaintiff for the purchase price of the ties under these circumstances, the burden was on the plaintiff to show that defendant agreed expressly or impliedly to the novation or substitution of plaintiff as seller in the stead of Rash, the original seller. It is conceded that no express agreement on the part of defendant to such novation or substitution was shown. If, however, the plaintiff in filling defendant's order to Rash intended to substitute himself as seller in the stead of Rash, and the defendant knew this at the time it received and used the ties shipped by plaintiff, then there was an implied agreement on the part of defendant to such substitution. But such an agreement will not be implied from the mere knowledge on the part of the defendant that its order to Rash for the ties was filled by plaintiff, but it must appear that the defendant knew that the plaintiff intended a novation or substitution of the plaintiff as seller in the stead of Rash. If the plaintiff intended a novation, it was his duty to make such intention known to the defendant in unequivocal language before it received and used the ties. Having failed to declare such intention before defendant received and used the ties, and having waited for a period of almost seven months after the ties were shipped, and until Rash had received payment therefor from defendant, before demanding payment therefor from defendant, plaintiff ought not to be heard to say in a suit for the purchase price of the ties that he so intended. Besides this, under all the facts and circumstances shown in evidence as disclosed by this record, the trial court was not bound to find that the plaintiff ever intended a novation.

There is no merit in the contention of plaintiff that the court erred in overruling his motion for judgment *non obstante veredicto.* A novation was not admitted by the answer, and, as said, the burden was on the plaintiff to show a novation.

The judgment of the court below accomplished substantial justice, and it should be affirmed. The Commissioner so recommends.

PER CURIAM:— The foregoing opinion of Sutton, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Daues, P. J.,* and *Becker* and *Nipper, JJ.,* concur.